The suit was commenced by appellee, seeking specific performance of three contracts in which she and appellant were the parties and to recover the payments which had accrued under said contracts but which had not been paid. Appellant filed a counterclaim alleging that appellee had breached one of her contracts, by refusing to attend a Tax Court trial in Cincinnati, and claimed $264,020.42 damages. The Chancellor found for the appellee, ordering specific performance of the contracts and the recovery of $25,216.40, as accrued payments and interest. The counterclaim was denied. From this decree the appellant takes this appeal.
The facts of this case are stated briefly in the Chancellor's decree as follows:
"The facts — very briefly stated — show that the plaintiff, and the defendant, as the result of matrimonial differences, entered into three agreements, two bearing date October 30, 1949, and one bearing date April 2, 1940. The defendant acquired from plaintiff stock valued at $1,250,000 and made certain payments and transfers of personal property to plaintiff, agreeable to the contractual obligations of the parties. Apparently the defendant has fully complied with his agreements, except concerning a payment of $625.00 each month since January 1, 1945. The last agreement, followed by a divorce decree of April 3, 1940, also provided that the defendant would pay all Federal capital gain or profit taxes and gift taxes in connection with the transaction between the parties, although the same might be levied against the plaintiff. This compromise settlement agreement of April 2, 1940, required the plaintiff to sign all papers necessary for the filing of any tax returns and any contests of tax assessments involving such taxes, and authorized the defendant to compromise or deal with such tax assessments as he might see fit.
"In 1940 the defendant paid a gift tax in the amount of $98,092.74 on the transaction. *Page 748 
Later the Government claimed a total gift tax of $366,779.68, which was duly protested. The protests, filed by defendant in the name of the plaintiff, not only sought to vitiate the deficiency assessment, and to recover the payment of $98,072.84, but involved liability for certain income taxes made in connection with the gift tax. The trial on the petition involving the protests was set before a tax court in Cincinnati for February 7, 1944.
"Previous correspondence between counsel for the parties showed that the plaintiff had indicated her intention of going to Cincinnati and testifying, agreeable to the request of defendant. However, about January 11, 1944, she changed her mind — for no valid reason — and her counsel advised counsel for the defendant that she did not want to go to Cincinnati to testify at the trial. Counsel for the defendant believed it impracticable to take her deposition, or to seek a continuance of the trial, and impossible to procure her attendance at the trial Counsel for defendant considered — and rightly so — that her favorable testimony to show that she had no donative intent at the time she transferred certain stock to the defendant, and to the effect that she and her then husband had in fact dealt at arms length in the transaction, was very material in order to successfully maintain the protests. Before time of trial, the defendant effectuated a compromise with the Government on the basis of which the defendant made an additional payment of $135,150.56, including interest, in full settlement of the gift tax liability, and another $30,777.12, for income tax. Hence, the defendant now asserts plaintiff's refusal to go to Cincinnati to be a breach of contract for which plaintiff should be denied any relief in this suit, and the defendant awarded a money decree.
"The Master found for the plaintiff and against the defendant From part of the report it may appear that the Master unduly emphasized the views of this Court expressed in the order of February 14, 1946. But from an examination of the entire report, it is apparent that the trial was conducted and the findings made, upon the basis of the issues formed by the bill, and amended answer and counterclaim of the defendant filed March 1, 1946, which the Court had before it May 29, 1946.
"There were no words in the agreements of October 30, 1949, or April 2, 1940, that required the plaintiff to appear and give testimony at any time or any place, nor was she required to cooperate with the defendant concerning the matter of liability for Federal taxes. But the defendant contends that though such terms may not have been actually expressed, they were implied by law, and are as binding as if actually written or spoken, particularly in view of the correspondence that went on between counsel prior to February 7, 1944.
"The written agreements between the parties were carefully prepared by counsel. The added provisions which might well have been written into one of the contracts at the time, had they been desired or contemplated by the parties, or counsel. The case now before the Court is quite different from an insurance indemnity contract, where the insured is specifically required to attend hearings and trials when requested, as well as assist in the conduct of suits. From the circumstances surrounding these parties, I am of the opinion that no implied agreement existed, which placed upon this plaintiff the legal duty of attending the trial in Cincinnati.
"As to the real value of plaintiff's testimony, in the light of her memory and indecisiveness as a witness in this suit, it seems conjectural whether her appearance and testimony would have been helpful or harmful to the contentions of defendant in the tax court. But that can never be determined, as the matter was wisely compromised and settled before trial. It is entirely possible that had she testified, the Government might have procured a judgment for the entire amount, which would have been obviously more unfavorable to the defendant than the settlement on the basis of about forty per cent, which he was able to procure. Even assuming that the written agreements are to be enlarged by implication, it is wholly improbable that any damage should be recovered by this defendant from this plaintiff, which could be said to be fairly and reasonably arising naturally from a breach of such *Page 749 
contract, or such as might reasonably be supposed to have been in contemplation of both of the parties at the time they made the contract, and as a probable result of a breach of it. To now award this defendant any damages on the basis of this claim, does not appear to be warranted by this record.
"It is therefore the conclusion of this Court: That the written agreements of 1939 and 1940 contained no express contract on the part of the plaintiff to testify in any court proceeding; that correspondence between counsel created no such contract; that the evidence fails to show that there was any promise which might be implied by law to create such a contract; and that there is a lack of any damage, both as to nature and extent, as it is reasonable to conclude were within contemplation of both parties at the time any contract might have been brought into existence by implication."
The appellant assigns and argues four assignments of error, to wit:
"No. 2. The Chancellor erred in finding that the evidence fails to show an express promise and undertaking by plaintiff to testify as a witness in plaintiff's suit in The Tax Court of the United States brought to determine plaintiff's Federal tax liability, if any, growing out of the contracts between plaintiff and defendant.
"No. 3. The Chancellor erred in finding that the contracts between plaintiff and defendant imposed on plaintiff no duty of cooperation with defendant in determining the Federal Tax liability, if any, against plaintiff, growing out of said contract.
"No. 4. The Chancellor erred in finding that the contracts between plaintiff and defendant did not create an implied undertaking on the part of plaintiff to testify in plaintiff's suit in The Tax Court of the United States, brought to determine the Federal tax liability, if any, against plaintiff.
"No. 7. The Chancellor erred in finding that the equities of this cause are with the plaintiff and against the defendant and that defendant had sustained no damages."
The pertinent provisions of the compromise settlement agreement of April 2, 1940, which ratified the transfer of stock of a value of $1,250,000 from the wife to the husband and which called for the husband's paying the wife $25,000 and $10,000 a year for twenty years and, among other matters, obligated the parties, are as follows:
The party of the first part agrees:
"Third. To pay all capital gain or profit tax, including gift tax or other Federal taxes, due or payable, if any, by reason of this agreement or any previous agreements or transactions between the parties. It being understood that said party of the second part is not to be liable for any such taxes.
"The party of the second part hereby agrees:
"First. To accept the payments hereinabove provided for in full for any and all claims or demands that she now has or claims to have against the party of the first part in connection with the sale and purchase of the stock hereinabove referred to, or any dividends heretofore or hereafter declared or paid on the same, or by reason of any other transaction, agreement, understanding, or obligation, express or implied, of any nature whatsoever, excepting however the separation and purchase and sale agreements of October 30, 1939.
"Second. To execute or sign any and all documents, papers, protests, petitions, application, affidavits, powers of attorney, deeds or quitclaims, and any and all other instruments required for the purpose of making proper income tax returns or gift tax returns necessary by reason of any of the provisions in this agreement contained, or by reason of any other agreement or transaction between the parties, or for contesting any claims, assessments or otherwise made by the Federal Government against her arising out of any of the transactions between her and the party of the first part, and for releasing and relinquishing any and all interest which she may have in any of the property of the party of the first part, or to remove a cloud or a threatened cloud upon the title of any of the property of the party of the first part.
"Third. Party of the second part further agrees that she will promptly forward to the party of the first part at his place of business, No. 2535 Spring Grove Avenue, *Page 750 
Cincinnati, Ohio, any and all notices, assessments, claims or demands of any kind received by her from the United States Government pertaining to any tax returns or taxes, and permit him, with or without the assistance and advice of counsel, to prosecute, defend, compromise, settle, or otherwise deal with such demands, claims, assessments or otherwise, as he sees fit.
"It is mutually agreed by and between the parties hereto that the agreements entered into by the parties on October 30, 1939, are hereby ratified, approved and confirmed in all other respects."
The suit in the Tax Court was to be heard February 7, 1944. Prior to this time the attorneys for appellant and appellee had corresponded frequently about appellee's attendance at the trial as a witness, which she agreed to do. A short time before the trial appellee changed her mind, deciding not to attend the trial. Attorneys for the appellant decided it would be futile to try to win the case without her testimony, so they compromised the claim for about 40% of what the government claimed to be due.
We are inclined to the conclusion that there was an implied obligation on the part of the wife to attend and testify at the Tax Court trial, but this we do not decide. Assuming such to be the case, the Chancellor stated: "Even assuming that the written agreements are to be enlarged by implication, it is wholly improbable that any damage should be recovered by this defendant from this plaintiff, which could be said to be fairly and reasonably arising naturally from a breach of such contract, or such as might reasonably be supposed to have been in contemplation of both of the parties at the time they made the contract, and as a probable result of a breach of it. To now award this defendant any damages on the basis of this claim, does not appear to be warranted by this record."
We find ourselves unable to do better than the Chancellor in this regard. The wife's claim is certain, and her damages are not conjectural, while the husband's claim, even if certain as to his rights, is uncertain and most conjectural as to damages.
The decree appealed should be affirmed, without prejudice to the rights of the appellant respecting any obligation of the wife to attend the Tax Court trial and any default in that regard.